W. P. MATTHEWS v. W. S. COPELAND and WM. BARROW.

*Rents—Husband and Wife—Official Bond.*

1. The rents of a wife's land (prior to the adoption of the constitution of 1868) accruing in the life-time of the wife, or of the husband surviving her and having an estate by the curtesy for life, belong to the husband and not to the heir of the wife; he is entitled to the land at the death of the husband;
   *Therefore,* where land was sold by a clerk and master in 1853 under a decree for partition among tenants in common, the husband and wife being entitled to a share in right of the wife; and the wife died in January 1868 and the husband in December 1873, without having received said share; *It was held,* in an action by the heir of the wife upon the bond of said clerk, that he was entitled to recover his share of the principal money realized by said sale, with interest from the death of the husband—the proceeds of sale standing as and for the land, and the interest thereon as and for the rent.

2. In an action for breach of an official bond, where it appeared that the officer, being re-appointed to the office, had renewed his bond in the same amount and with the same sureties, and the plaintiff declared upon and alleged a breach of both bonds, and the defendant demurred for a misjoinder of causes of action; *Held,* that the demurrer was properly overruled.

(*King* v. *Little,* 77 N. C. 138, cited and approved.)

CIVIL ACTION tried at Spring Term, 1878, of NORTHAMPTON Superior Court, before *Seymour, J.*

This action was brought against the defendants as sureties upon the official bonds of John Randolph who was appointed clerk and master in equity of Northampton county in 1850, and re-appointed in 1854. He executed two bonds and the defendants were sureties upon each; and he died before action was brought. Certain lands which were held by the father and mother of plaintiff, and others, as tenants in common were sold by said clerk and master under a decree in 1853 upon a petition for partition. The plaintiff's father, was entitled to a life estate in his wife's

share of the land, as tenant by the curtesy. And it was alleged that the purchase money was collected in 1854 and 1855, and no part thereof had been paid. The father and mother of plaintiff are both dead, (the mother dying in January, 1868, and the father in December, 1873,) and the plaintiff is the only child and heir at law, and claims the right to receive said share of the purchase money as heir of his mother, and brought this action for its recovery. The defendants demurred to the complaint, for that, there was a misjoinder of causes of action in declaring upon the two bonds of said clerk, and insisted that separate actions should be brought. Upon the hearing before *McKoy, J.,* the demurrer was sustained, and leave granted to plaintiff to amend complaint. The complaint was accordingly amended and the defendants again demurred, assigning as cause, among others, the one above stated, which was overruled by His Honor, and judgment given for plaintiff, from which the defendants appealed.

*Messrs. R. B. Peebles, T. N. Hill* and *Busbee & Busbce,* for plaintiff.

*Messrs. W. C. Bowen* and *Mullen & Moore* for defendants.

BYNUM, J. 1. In *King* v. *Little,* 77 N. C., 138, it was determined as to the wife's land, what would be her rights as to accrued and accruing rents where she survives her husband ; we are now to determine how it is, where the husband survives the wife.

The case before us is simplified, if we assume that the land has not been sold, but remains as to the title just where it was at the death, first, of the wife, and second, of the husband. Marriage is only a qualified gift to the husband of the wife's choses in action, that is, upon condition that he reduce them into possession during its continuance. If he die without having reduced such property into posses-

sion and before his wife, she and not his executors will be entitled to it; but if the husband survives the wife and he take out letters of administration upon her estate, he will be entitled as such administrator to all her personal estate which continued in action and unrecovered at her death; and if he die before taking out letters, or after, and before her choses in action have been by him reduced into possession, such property can not be recovered by his representatives, but administration to the wife *de bonis non* must be sued out.

Such administrator however in equity is considered as the trustee of what he receives, for the personal representative of the husband. 1 Williams on Executors, 778-9. Property falling under the description of *choses in action* of the wife, are debts owing to her on bond or otherwise, *arrears of rent*, legacies, trust funds, or other property recoverable by suit. So that all rent which had accrued to the wife and was uncollected by the husband at her death, belonged in the manner we have described to the personal representative of the husband. Upon the death of the wife, the husband became the tenant by the curtesy consummate, and had a life estate in the land. All the rents and profits which afterwards accrued during his life of course belonged to him; and if not recovered by him in his life time, they devolved upon his personal representative. *Ibid*, 779, 784, and authorities there cited.

It is thus seen that none of the rents which accrued in the life time of the wife, or in the life time of the husband surviving her and having an estate by the curtesy for life, belong to the heir at law of the wife. He is entitled to the land at the death of the husband, and nothing more. The proceeds of the sale of the land stand, as and for the land; and the interest thereon stands, as and for the rent. The plaintiff as the heir at law of his mother is entitled to his share of the principal money realized by the sale for parti-

tion, with interest from the time the estate would have devolved upon him, to wit, from the death of the husband, Dec. 9, 1873.

2. The land was sold for partition on the 20th of June, 1853, by John Randolph, the clerk and master of the Court of Equity of Northampton county, under a decree for that purpose. In 1854 and 1855, he collected the purchase money, the principal of which was $1395, to one fourth of which the plaintiff was entitled on the death of the tenant by the curtesy. Randolph was first appointed clerk and master in 1850 for four years, and was reappointed in 1854 for four years longer, giving bond on each appointment in the sum of $10,000 with the same sureties upon each bond. The plaintiff declared upon a breach of both bonds, and that is excepted to by demurrer. As the defendants are the only sureties upon both bonds, their liability is the same, whether the breach was of the one or the other. In respect of their liability they stand in no better condition than if instead of giving two bonds for four years each, they had only executed one bond for eight years.

As a demand before suit was made upon the executor of John Randolph, the clerk and master, and perhaps without such demand as it is admitted that his estate is wholly insolvent, the plaintiff is entitled under the statute to twelve per cent interest on his share of the estate from the time it became due, to wit, from the 9th of December, 1873.

It will be observed that the rights of the parties in this action arose under the law as it existed prior to the recent constitutional and legislative changes of the law in respect of the property of married women, and are not affected by those changes.

There is error. Judgment reversed and judgment will be rendered here in accordance with this opinion.

Error.                                   Judgment reversed.